1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON
8

9   MICHAEL JOHN TAYLOR,            )
                                    )      No. CV-09-178-JPH
10              Plaintiff,          )
                                    )
11  v.                              )      ORDER GRANTING DEFENDANT'S
                                    )      MOTION FOR SUMMARY
12  MICHAEL J. ASTRUE,              )      JUDGMENT AND DENYING
    Commissioner of Social Security,)      PLAINTIFF'S MOTION FOR
13                                  )      SUMMARY JUDGMENT
                Defendant.          )
14                                  )
                                    )
15  ─────────────────────────────  )

16       BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 14, 16.)  Attorney

17  Jeffrey Schwab represents plaintiff; Special Assistant United States Attorney Benjamin J. Groebner

18  represents defendant.  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 8.)

19  After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's

20  Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

21                          **JURISDICTION**

22       Plaintiff Michael Taylor (plaintiff) protectively filed for disability income benefits (DIB) and

23  supplemental security income (SSI) on January 18, 2006.  (Tr. 64, 138, 382.)  Plaintiff alleged an onset

24  date of November 2, 2005. (Tr. 64,383.)  Benefits were denied initially and on reconsideration.  (Tr. 34,

25  38, 374, 377.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held

26  before ALJ Richard A. Say on January 16, 2008.  (Tr. 396-423.)  Plaintiff was represented by counsel

27  and testified at the hearing. (Tr. 398-418.)  Vocational expert Debra Lapoint also testified. (Tr. 418-21.)

28   The ALJ denied benefits (Tr. 16-26) and the Appeals Council denied review. (Tr. 4.)  The matter is now

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

1  before this court pursuant to 42 U.S.C. § 405(g).

2                              **STATEMENT OF FACTS**

3        The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and

4  the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

5        Plaintiff was 40 years old at the time of the hearing.  (Tr. 398.)  He graduated from high school.

6  (Tr. 398.)  Plaintiff has work experience as a tank commander in the U.S. Army, a waiter/bartender, and

7  in ground operations for airlines.  (Tr. 126.)  Plaintiff testified that he became disabled in November 2005

8  due to AIDS.  (Tr. 399.)  He was last employed from January to July 2007, working at the ticket counter

9  and gate for an airline.  (Tr. 399, 406.)  He testified that he cannot work because of his need for sleep,

10 fatigue, nausea, side effects from medications, and depression.  (Tr. 414.)  He is tired all the time and has

11 diarrhea.  (Tr.401.)  Plaintiff testified that on a normal day, he wakes at 7 a.m., takes two naps of two to

12 three hours each, goes to bed at 9 p.m., and still feels like he has not gotten enough sleep.  (Tr. 404.)  At

13 least once a week he does not get out of bed at all.  (Tr. 411.)  Plaintiff had three surgeries on his cervical

14 spine in 2007.  (Tr. 401.)  He still needs physical therapy but his neck has been okay for the most part

15 since the last surgery.  (Tr.402.)  Plaintiff sometimes has numbness in his hands, his grip is weak and he

16 can feel tightness in his neck when he turns his head.  (Tr. 407-08.)  He uses an icepack, heating pad or

17 soaks in the tub to relieve neck pain.  (Tr. 410.)  Plaintiff testified he has had depression since 2001 and

18 he was taking medication for depression at the time of the hearing.  (Tr. 402-03.)

19                              **STANDARD OF REVIEW**

20       Congress has provided a limited scope of judicial review of a Commissioner's decision.  42

21 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the

22 determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler,*

23 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999).  "The

24 [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are

25 supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42

26 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

27 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan,* 888 F.2d 599,

28 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -2

Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A).  The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he or she is engaged in substantial gainful activities.  If the claimant is engaged in substantial gainful activities,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past.  If plaintiff is able to perform his or her previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

1      **ALJ'S FINDINGS**

2          At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in

3    substantial gainful activity since November 2, 2005, the alleged onset date. (Tr. 18.)  At step two, the

4    ALJ found plaintiff's impairments of HIV/AIDS, major depressive disorder and degenerative disc disease

5    of the cervical spine are severe.  (Tr. 19.)   At step three, the ALJ found that plaintiff does not have an

6    impairment or combination of impairments that meets or medically equals one of the listed impairments

7    in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 22.)  The ALJ then determined:

8              [C]laimant has the residual functional capacity to perform less than the
               full range of light work because of postural, manipulative, environmental
9              and vocational nonexertional limitations. He can lift and carry 10 pounds
               frequently and 20 pounds occasionally.  He can sit up to six hours in an
10             eight-hour workday and he can stand and walk for up to six hours in an
               eight-hour workday with normal breaks. He can occasionally climb stairs
11             and ramps, stoop, kneel, crouch, crawl, and reach overhead.  He should
               never climb ladders, ropes, or scaffolds and he should avoid vibration. He
12             should have superficial interactions with the general public and he can
               interact with co-workers for work-related activities.

13   (Tr. 22.) At step four, the ALJ found plaintiff is unable to perform any past relevant work.  (Tr. 24.)

14   After taking into account plaintiff's age, education, work experience,  residual functional capacity and

15   the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers

16   in the national economy that the plaintiff can perform.  (Tr. 25.)  Thus, the ALJ concluded plaintiff has

17   not been under a disability, as defined in the Social Security Act, from November 2, 2005 through the

18   date of the decision.  (Tr. 25.)

19                                            **ISSUES**

20         The question is whether the ALJ's decision is supported by substantial evidence and free of legal

21   error.  Specifically, plaintiff asserts the ALJ erred by:  (1) failed to fully develop the record; and (2)

22   improperly determining that  plaintiff does not meet a listed impairment (Ct. Rec. 15 at 7-9).  Defendant

23   argues the ALJ: (1) properly found plaintiff does not meet a listing; and (2) adequately developed the

24   record. (Ct. Rec. 17 at 7-15.)

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

**DISCUSSION**

**1.    Duty to Develop the Record**

Plaintiff argues the record is insufficient for the ALJ to reach a properly supported determination regarding plaintiff's degenerative disc disease of the cervical spine.  (Ct. Rec. 15 at 7.)  In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983).  The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination.  20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a.    Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.

The ALJ thoroughly reviewed the evidence relating to plaintiff's severe back impairment. (Tr. 20-21.)  In April 2007, plaintiff had neck surgery to relieve symptoms of spinal stenosis at C5-6. (Tr. 307.)  Initially, plaintiff was doing well and was recovering from surgery without much difficulty.  By June 2007, plaintiff had returned to light duty work at the airline.  (Tr. 320.)  In September 2007, Plaintiff reported that his cervical problems had been resolved until about two months prior.  (Tr. 324.)  He was experiencing increased numbness and tingling and a dead feeling in both hands.  (Tr. 324.)  On October 1, 2007, Plaintiff underwent a cervical laminoplasty.  (Tr. 338, 342.)  After some initial difficulty with a post operative infection of the wound, plaintiff reported that "the reason he had the surgery, numbness in his hands and pain in his neck with dizziness has resolved and he feels much better."  (Tr. 346.)  By the end of October 2007, plaintiff was showing adequate healing and it was recommended that he restart a reconditioning program and physical

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

1   therapy.  (Tr. 349.)  He was told to avoid lifting over 15 to 20 pounds.  (Tr. 349.)

2          In January 2008, plaintiff was examined by Dr. Neil Barg, an infectious disease specialist.

3   (Tr. 356-58.)  Dr. Barg diagnosed AIDS, hypertension, C3-C4 laminoplasty, and depression.  (Tr.

4   357.)  He assessed plaintiff's AIDS and hypertension as mildly severe, plaintiff's depression as

5   moderately severe, and plaintiff's condition post laminoplasty as markedly severe, causing very

6   significant interference with plaintiff's ability to perform basic work-related functions.  (Tr. 357.)  Dr.

7   Barg indicated plaintiff's overall work level was severely limited, defined as unable to lift at least 2

8   pounds or unable to stand and/or walk.  (Tr. 357.)  Dr. Barg also noted restricted ability to bend,

9   climb, pull, push and reach.  (Tr. 357.)

10          Plaintiff argues the record is incomplete because there is no assessment of plaintiff's

11   exertional capacities post-surgery.  (Ct. Rec. 15 at 7.)  As the ALJ pointed out, Dr. Barg indicated that

12   plaintiff was significantly limited during the process of healing from his last back surgery.  (Tr. 21,

13   356.)  This suggests that plaintiff's limitations would decrease as he continued to heal.  The ALJ also

14   pointed out that Dr. Barg's opinion is a fill-in-the-blank assessment form which is not supported by

15   examination notes, medical signs or clinical findings.  (Tr. 23.)  Opinions on a check-box form or

16   form reports which do not contain significant explanation of the basis for the conclusions may be

17   accorded little or no weight.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Johnson v.*

18   *Chater*, 87 F.3d 1015, 1018 (9th Cir. 1996).  The ALJ therefore reasonably gave less weight to Dr.

19   Barg's opinion regarding plaintiff's limitations.

20          The ALJ observed that no evidence of additional follow-up or post-operative surgery was

21   offered by plaintiff between the date of the hearing and the date of the decision.  (Tr. 21.)  The ALJ

22   concluded that plaintiff's cervical spine surgeries have been successful in relieving symptoms.  (Tr.

23   23.)  Additionally, in April 2008, Dr. Rowe noted that plaintiff runs five miles every day and works

24   out three times per week.  (Tr. 361.)  Plaintiff listed his leisure activities as going to the gym and

25   running.  (Tr. 361.)  Plaintiff's neck surgeries were listed as part of his medical history, but plaintiff

26   identified his primary medical problems as "full-blown AIDS" and chronic fatigue.  (Tr. 360.)

27   Plaintiff testified that his neck has been okay "for the most part" since his last surgery.  (Tr. 402.)

28   When asked how his neck still affected him, plaintiff testified that he still needs physical therapy and

1  that he has to be careful with lifting.  (Tr. 402.)  The ALJ also made an adequately supported

2  credibility determination that plaintiff's symptoms do not appear to be as fatiguing and limiting as

3  alleged, and plaintiff does not challenge the credibility finding.  (Tr. 23.)  All of these factors suggest

4  that plaintiff had few limitations after his back surgery.

5        The record before the ALJ was neither ambiguous nor inadequate to allow for proper

6  evaluation of the evidence.  *See Mayes v. Massanari*, 276 F.3d 453, 460 (9ᵗʰ Cir. 2001).   An ALJ has

7  broad latitude in ordering a consultative examination.  *Reed v. Massanari,*  270 F.3d 838, 842 (9ᵗʰ Cir.

8  2001).  The government is not required to bear the expense of an examination for every claimant.  *See*

9  20 C.F.R. § 404.1517.  In this case, plaintiff has not identified any ambiguity or inadequacy  in the

10  record requiring an additional consultative examination.  Therefore, the ALJ did not err.

11  **2.      Listing 14.08**

12        Plaintiff argues he meets the criteria for disability under listing 14.08(N) of 20 C.F.R. Part

13  404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d)). If plaintiff meets the listed criteria for disability,

14  he is presumed to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The ALJ indicated

15  that he considered plaintiff's severe impairment of HIV and compared plaintiff's impairment to the

16  criteria for listing 14.08, the listing for human immunodeficiency virus or HIV.  (Tr. 22.)  The HIV

17  listing criteria includes:

18        Repeated (as defined in 14.00D8) manifestations of HIV infection . . .
        resulting in significant, documented symptoms or signs (e.g., fatigue,
19        fever, malaise, weight loss, pain, night sweats) and one of the following
        at the marked level (as defined in 14.00D8):
20        1.      Restrictions of activities of daily living; or
        2.      Difficulties in maintaining social functioning; or
21        3.      Difficulties in completing tasks in a timely manner due to
                deficiencies in concentration, persistence or pace.
22

23  20 C.F.R. § 404 Subpt. P App. 1, 14.08N.  The ALJ concluded that plaintiff's medically severe and

24  non-severe impairments, both singly and in combination, do not meet or medically equal the requisite

25  criteria for any listed impairments as set forth in the regulations, including listing 14.08.  The ALJ

26  specifically found that although plaintiff's HIV is a severe impairment, the allegation of development

27  of AIDS is given no weight as it is no way corroborated or supported by any signs or findings in the

28  record.  (Tr. 20.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

Plaintiff argues that he has a documented history of chronic fatigue and malaise associated with HIV.  (Ct. Rec. 15 at 9.) Plaintiff's fatigue and malaise  must constitute a repeated manifestation of HIV infection resulting significant, documented symptoms or signs in order to meet the requirements of listing 14.08N.  As used in 14.08N, "repeated" means the conditions occur with the following frequency:

1.  An average of three times a year, or once every four months, each lasting two weeks or more; or
2.  If the conditions do not last for two weeks but occur substantially more frequently than three times in a year or once every four month; or
3.  If they occur less often than an average of three times a year or once every four months but last substantially longer than two weeks.

*See* 20 C.F.R. § 404 Subpt. P App. 1, 14.00D8.  Plaintiff asserts his testimony regarding fatigue is "wholly consistent with what he told a variety of medical providers." (Ct. Rec. 15 at 9.)  Plaintiff testified that he has severe fatigue and is "pretty much tired all the time." (Tr. 401.)  He said he has had fatigue since the time he first saw his treating physician, Dr. Tucker in 2005.  (Tr. 404.)  He thinks he is not able to work at any job in part because of his need for sleep and fatigue.  (Tr. 414.)

Plaintiff points to the report of examining psychologist Dr. Goodwin and the notes of treating physician Dr. Tucker in support of his allegations of fatigue.  (Ct. Rec. 15 at 3-4, Tr. 166, 263.)  In December 2005, Dr. Goodwin recorded plaintiff's reports of variability in sleep quantity, difficulty getting to sleep, difficulty staying asleep, early morning awakening and difficulty staying awake.  (Tr. 263.)  Dr. Goodwin noted insomnia and hypersomnia may be present.  (Tr. 263.)  Dr. Goodwin's note to plaintiff's treating physician, Dr. Tucker, recommended starting a sleep aid medication for plaintiff's sleep deficit.  (Tr. 353.)  Dr. Tucker prescribed a nighttime sedating agent at plaintiff's next appointment.  (Tr. 211.)  In February 2006, Dr. Tucker indicated no repeated manifestations of HIV infection were present, including fatigue or malaise.  (Tr. 206.)  This suggests that the fatigue identified by Dr. Goodwin had resolved after treatment.

Plaintiff cites a note by Dr. Tucker dated March 14, 2006 which states plaintiff "appears fatigued." (Tr. 166, Ct. Rec. 15 at 3.)  However, Dr. Tucker's notes two days later, on March 16, 2006 indicate plaintiff "appears well" and does not mention fatigue.  (Tr. 165.)  In October 2006, Dr. Tucker noted plaintiff was without symptoms except for intermittent diarrhea and abdominal discomfort.  (Tr. 276.)  In January 2007, Dr. Tucker indicated plaintiff's HIV was asymptomatic.  (Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

289.)  In April 2007, Dr. Tucker noted plaintiff was doing "basically well" and in May 2007, Dr. Tucker noted plaintiff reported doing well and opined that plaintiff was doing generally quite well. (Tr. 306, 311, 312, 315.)  Dr. Tucker's records are not consistent with plaintiff's testimony and do not support a finding of repeated manifestation of HIV in the form of fatigue or malaise as defined by the regulations.

Plaintiff also points to Dr. Rowe's March 2008 report which mentions that plaintiff typically experiences one and a half to two hours of insomnia before getting to sleep, wakes feeling tired, and gets his most restful sleep during the day.  (Tr. 361.)  Plaintiff told Dr. Rowe his greatest barrier to work was his fatigue and having to frequently take naps.  (Tr. 361.)  Dr. Rowe observed plaintiff appeared fatigued toward the end of the testing.  (Tr. 361.)  While this is generally consistent with plaintiff's testimony, it does not constitute a repeated manifestation of HIV resulting in significant, documented fatigue or malaise as required by listing 14.08N and 14.00D8.  Dr. Rowe's report does not contain any information about the duration or frequency of the fatigue described by plaintiff. Dr. Rowe's report alone does not constitute evidence sufficient to meet the requirements of 14.08N as defined by 14.00D8.

Even if plaintiff's fatigue meets the requirements of listing 14.08N and 14.00D8, plaintiff must also show a marked restriction in activities of daily living, in difficulties in maintaining social functioning, or in difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace.  20 C.F.R. § 404 Subpt. P App. 1, 14.08N.  The term "marked" as a standard for measuring the degree of functional limitation means "more than moderate, but less than extreme."  20 C.F.R. § 404 Subpt. P App. 1, 14.00D8.  An individual need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with the ability to function independently, appropriately, and effectively.  *Id.*  The ALJ found that even with drug and alcohol abuse, and after taking into account all of the medical and psychological evidence of record, plaintiff's restrictions in activities of daily living are mild, difficulties in maintaining social functioning are moderate, and difficulties in maintaining concentration, persistence and pace are moderate.  (Tr. 22.)

Plaintiff argues he established marked difficulties in completing tasks in a timely manner due

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

to deficiencies in concentration, persistence and pace. (Ct. Rec. 15 at 8-9.) Plaintiff points to the assessment of Dr. Goodwin, an examining psychologist who opined that plaintiff has a marked limitation in the ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting. (Tr. 257.) Plaintiff argues this limitation is analogous to a limitation in concentration, persistence and pace. (Ct. Rec. 15 at 8-9.) As defendant points out, the limitation on the ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting is a social limitation, which is a separate category of limitation from concentration, persistence and pace. (Ct. Rec. 17 at 12-13.) Furthermore, Dr. Goodwin specifically stated, "No apparent deficits were evidenced in attention and concentration." (Tr. 263.)

Additionally, the ALJ gave little weight to Dr. Goodwin's opinion. (Tr. 21.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ gave little weight to Dr. Goodwin's opinion because it is not consistent with the balance of the record. (Tr. 21.) The ALJ found that the opinions of Dr. Rowe and Dr. Tucker regarding plaintiff's limitations are consistent with the opinion of the state consulting psychologist who assessed some moderate limitations but no marked limitations. (Tr. 21, 192-94.) Dr. Rowe assessed only mild and moderate limitations, including a moderate limitation in the ability to respond appropriate to usual work situations and to changes in a routine work setting. (Tr. 371-73.) Plaintiff does not explain how the ALJ erred in rejecting Dr. Goodwin's opinion, and the court concludes the ALJ's reasoning

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

is legally sufficient and supported by substantial evidence.  As a result, Dr. Goodwin's marked limitations were properly rejected by the ALJ and cannot form the basis for a finding that plaintiff meets or equals the listing.

Plaintiff also suggests the ALJ should have obtained the opinion of a psychological exert regarding whether plaintiff meets or equals listing 14.08.  (Ct. Rec. 15 at 9.)   Plaintiff has the burden of demonstrating disability under the listings.  *Roberts v. Shalala*, 66 F.3d 179, 182 99th Cir. 1995); *see Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (burden is on the claimant to show that his impairment meets all of the specified medical criteria for a listing, or present medical findings equal in severity to all the criteria for the one most similar listed impairment); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) ("The burden of proof is on the plaintiff to establish this his or her impairment meets or equals a listing.").   The administrative law judge is responsible for deciding the ultimate legal question about whether a listing is met or equaled.  S.S.R. 96-6p.  The ALJ made a thorough discussion of the evidence which adequately identifies the basis for the step three finding. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the Listing of Impairments.  The [ALJ's] four page 'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based'"); *see also Key v. Heckler*, 754 F.2d 1545, 1549 n. 2 (9th Cir. 1985) ("the ALJ examined the medical reports submitted by the various physicians and concluded that the preponderance of the evidence did not establish the existence of the findings necessary to support a showing of disability under the Listing of Impairments").  In this case, the ALJ thoroughly discussed the evidence which formed the basis of the step three finding.  Plaintiff did not meet the burden of showing he meets or equals the criteria in listing 14.08N.

Even so, policy requires that the judgment of a physician or psychologist designated by the Commissioner on the issue of equivalence on the evidence be received into the record to be weighted appropriately.  S.S.R. 96-6p.  The requirement to receive expert opinion evidence into the record may be satisfied by the opinion of a state agency medical or psychological consultant on the issue of equivalence.  *See* S.S.R. 96-6p. The ALJ must obtain an updated medical opinion from a medical expert in two circumstances:

1.    When no additional medical evidence is received, but in the ALJ's judgment the record suggests that a judgment of equivalence may be reasonable;

2.    When additional medical evidence is received that in the opinion of the ALJ may change the state agency medical or psychological consultant's finding that the impairment is not equivalent in severity to any impairment in the Listing of Impairments.

S.S.R. 96-6p.  In this case, an opinion from a state consulting physician dated February 13, 2006 and an opinion from a state consulting psychologist dated February 14, 2006 are part of the record.  (Tr. 178-203.)  The consulting physician stated plaintiff's symptoms were partially credible, "however, he has none of the qualifying criteria for Listing 14.08."  (Tr. 203.)  Neither of the circumstances requiring an updated opinion from a medical expert applies here.  Additional medical and psychological evidence was received after the February 2006 consulting opinions, but the ALJ concluded the updated records of Dr. Tucker and Dr. Rowe are consistent with those findings.  (Tr. 21.)  As discussed above, Dr. Tucker described plaintiff's HIV as "asymptomatic" and Dr. Rowe assessed only mild and moderate findings.  The later evidence would not change the opinions of the state consulting professionals because it is consistent with their earlier findings.  Thus, the ALJ was not required to obtain an additional medical expert opinion on the issue of equivalence.

The ALJ's determination that plaintiff did not meet listing 14.08 is supported by substantial evidence.  It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).  It is not the role of the court to second-guess the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Plaintiff did not demonstrate that the ALJ erred by failing to find that he meets the requirement of repeated demonstrations of HIV infections through documented symptoms, nor did plaintiff show that the ALJ's findings of mild and moderate limitations in plaintiff's activities of daily living,  social functioning, and concentration, persistence and pace are inappropriate.  The ALJ was not required to obtain an updated consultative examination because later findings are consistent with the consultative opinions in the record.  The ALJ's findings are supported by substantial evidence in the record and the ALJ did not err.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

1

2                              **CONCLUSION**

3          Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is

4   supported by substantial evidence and is not based on error.

5          Accordingly,

6          **IT IS ORDERED:**

7          1.      Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is **GRANTED.**

8          2.      Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **DENIED**.

9          The District Court Executive is directed to file this Order and provide a copy to counsel for

10  plaintiff and defendant.  Judgment shall be entered for defendant and the file shall be **CLOSED**.

11         DATED September 22, 2010

12

13                              S/ JAMES P. HUTTON
                         UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14